UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-20640-BLOOM/Otazo-Reyes

TANISA TAMITO EVERETT,

    Plaintiff,

v.

KILOLO KIJAKAZI, *Acting Commissioner
of Social Security*,

    Defendant.
_____/

## ORDER ON REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Plaintiff Tanisa Everett's ("Claimant") and Defendant Kijakazi's ("Defendant") competing Motions for Summary Judgment. *See* ECF No. [13] ("Claimant's Motion"); ECF No. [20] ("Defendant's Motion"). The Motions were previously referred to the Honorable Alicia M. Otazo-Reyes, United States Magistrate Judge, for a Report and Recommendation ("R&R"), ECF No. [12]. On January 6, 2023, Judge Otazo-Reyes issued her R&R, ECF No. [22], recommending that (i) Defendant's Motion be granted, (ii) Claimant's Motion be denied, and (iii) the Administrative Law Judge's Decision ("ALJ's Decision") be affirmed. The R&R advised the parties that objections to the R&R must be filed within fourteen days. *Id.* at 37. On January 20, 2023, Claimant filed her Objections to the Magistrate Judge's R&R, ECF No. [23] ("Objections"). Defendant did not respond or file separate objections.

The Court has carefully considered the R&R, Claimant's Objections, the record in this case, the applicable law, and is otherwise fully advised. Moreover, the Court has conducted a *de novo* review of the R&R and the record in light of Claimant's Objections. *See Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)); *Macort v. Prem, Inc.*, 208 F.

App'x 781, 784 (11th Cir. 2006) ("Where a proper, specific objection to the magistrate judge's report is made, it is clear that the district court must conduct a *de novo* review of that issue."). For the reasons set forth below, the Court adopts Judge Otazo-Reyes' R&R in part.

I. **BACKGROUND**

The Court adopts Judge Otazo-Reyes' thorough description of the record below, ECF No. [22] at 1-28, and incorporates it by reference herein.

By way of summary, Claimant filed an application for supplemental security income and an application for disability insurance benefits, alleging a disability onset date of December 13, 2019. ECF No. [22] at 2. The applications were denied initially and upon reconsideration. At Claimant's request, a hearing was held on October 26, 2021 before an Administrative Law Judge ("ALJ"). *Id*. The ALJ issued her decision on November 10, 2021. TR. at 104.[1] On February 1, 2022, the Appeals Council denied a request for review of the ALJ's unfavorable decision. *Id.* at 3.

On March 2, 2022, pursuant to 42 U.S.C. § 405(g), Claimant filed this action seeking reversal of the ALJ's final administrative decision. ECF No. [1]. Claimant presented two arguments as to why the ALJ's decision should be reversed. She argued that:

I.  The Appeals Council abused its discretion in declining to admit "new and material" evidence showing Claimant underwent a total right hip replacement just 34 days after the ALJ's decision was issued; and

II. The ALJ failed to properly assess the opinion evidence of record and, consequently, the ALJ's [residual functional capacity] finding was also not supported by substantial evidence.

*See* ECF No. [13].

In the R&R, Judge Otazo-Reyes recommends denying both of Claimant's arguments. ECF No. [22]. Regarding Claimant's first argument, Judge Otazo-Reyes concluded that the Appeals

---

[1] When citing to the Administrative Transcript ("TR."), ECF No. [11], the Court follows the convention of the parties and the Magistrate Judge in citing to the transcript pages rather than the court record pages.

Council properly declined to consider Claimant's "new and material" evidence because the evidence was either not chronologically relevant or substantially similar to evidence the ALJ had already considered. *Id*. at 31-33. Judge Otazo-Reyes rejected Claimant's second argument upon finding that the ALJ appropriately evaluated the opinion evidence of Claimant's expert pursuant to the relevant regulations. *Id*. at 34-36. Claimant objects to each of the Magistrate Judge's conclusions.

## II. LEGAL STANDARD

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort*, 208 F. App'x at 783 (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)) (alterations omitted). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the report and recommendation to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001). A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1).

The R&R properly states the legal and regulatory standards an ALJ must employ in making a determination as to eligibility for supplemental security income benefits. *See* ECF No. [22] at 28. Judicial review of the ALJ's Decision is limited to whether "it is supported by substantial

evidence and based on proper legal standards." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Lewis*, 125 F.3d at 1439); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a mere scintilla, but less than a preponderance") (quotation marks omitted). A court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).

### III.   DISCUSSION

#### A.   New and Material Evidence

Claimant first argues that the Appeals Council erred in refusing to consider new evidence that Claimant submitted after the ALJ rendered its unfavorable decision. ECF No. [23] at 1. At issue are two sets of documents: (1) treatment notes from the Spine and Wellness Centers of America dated October 28, 2021, and (2) records from the Orthopedic Center of South Florida dated November 15, 2021 and December 14, 2021. ECF No. [22] at 31-33.

Claimant does not object to the legal standard that the Magistrate Judge applied. "When a claimant submits new evidence to the Appeals Council, '[t]he [Council] must consider new, material, and chronologically relevant evidence and must then review the case if the ALJ's

decision is contrary to the weight of the evidence currently of record.'" *Burnett v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-81211, 2021 WL 4973594, at *3 (S.D. Fla. Aug. 24, 2021) (alterations in original) (quoting *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 832 (11th Cir. 2013). "Evidence is new if it is non-cumulative to the evidence submitted to the ALJ[,] . . . chronologically relevant if it relates to the period on or before the date of the [] hearing decision[,] . . . [and] material if there is a reasonable possibility that the new evidence would change the administrative result." *Burnett*, 2021 WL 4973594 at *3 (quotation marks omitted). "Whether evidence is 'new, material, and chronologically relevant' is a question of law subject to de novo review." *Clough v. Soc. Sec. Admin., Comm'r*, 636 Fed. Appx. 496, 497 (11th Cir. 2016) (quoting *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir.2015)).

Beginning with the October 28 treatment note from the Spine and Wellness Centers of America, the Court agrees with Judge Otazo-Reyes that this evidence is substantially similar to a treatment note from a month prior. ECF No. [22] at 33. Indeed, as Claimant candidly admitted, the October 28 note "contains no new revelations per se[.]" ECF No. [13] at 6. The Magistrate Judge correctly affirmed the Appeals Council's determination that this evidence was not material. ECF No. [22] at 33.

Turning to the December 14 record from the Orthopedic Center of South Florida, that record consists of notes from the hospital where Claimant received a right hip replacement surgery – in medical terms, a "hip arthroplasty" – on December 14, 2021. TR. at 48-65. Claimant has not cited anything in those notes that are "chronologically relevant" or "material." *Washington*, 806 F.3d at 1321. The surgery occurred a month after the ALJ's decision on November 10, and there is nothing in the notes discussing Claimant's condition prior to November 10. TR. at 48-65. Moreover, as the ALJ recognized in her decision, the record before the ALJ already reflected that

5

Claimant would need "hip surgery in the future." TR. at 114. Thus, the Court agrees with Judge Otazo-Reyes that the Appeals Council properly declined to consider the December 14 evidence. ECF No. [22] at 32.

An extended discussion is required regarding the November 15 record from the Orthopedic Center of South Florida. That record is a three-page treatment note from Dr. Eirle, who had been treating Claimant for hip issues since August 18, 2021. ECF No. [22] at 17. As noted above, the ALJ issued her unfavorable decision on November 10, 2021 – five days prior to the November 15 visit that led to the treatment note in question. TR. at 104. Thus, the first issue is whether the record is "chronologically relevant."

### i.     Chronologically Relevant

"New evidence is 'chronologically relevant if it relates to the period on or before the date of the hearing decision.'" *Downing v. Comm'r of Soc. Sec.*, 856 F. App'x 822, 824 (11th Cir. 2021) (quoting 20 C.F.R. § 416.1470(a)(5)). The Appeals Council found the November 15 record postdates the ALJ's November 10 decision, so it "does not relate to the period at issue." TR. at 2. The Magistrate Judge agreed, noting that "[e]vidence that a condition the ALJ previously considered has deteriorated may entitle a claimant to benefits under a new application, but it is not probative of whether a person is disabled during the specific period under review." ECF No. [22] at 32 (quoting *Bostick v. Comm'r of Soc. Sec.*, No. 19-cv-585, 2020 WL 2394153, at *3 (M.D. Fla. May 12, 2020)).

However, contrary to the Appeals Council's statement, the mere fact that the record in question postdates the ALJ's decision is not determinative of whether the record is "chronologically relevant." *Washington*, 806 F.3d at 1322-23. "[O]pinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant." *Id.* (citation

omitted). As for the Magistrate Judge's reasoning, her conclusion rests on the assumption that Claimant's deterioration occurred between the ALJ's November 10 decision and Claimant's November 15 visit to Dr. Eirle. As explained below, that assumption does not appear warranted.

When the ALJ rendered her decision on November 10, 2021, she had in evidence Dr. Eirle's treatment notes from Claimant's visits on August 18, August 30, and October 11 of the same year. TR at 1361-63; 1288-91. The October 11 treatment note states that Claimant "certainly has arthroplasty level symptoms." *Id*. at 1361. Dr. Eirle "recommended total hip replacement," as he had previously recommended to Claimant. *Id.* However, at the time of the October 11 visit, "[d]ue to numerous social factors and financial factors, [Claimant] [did] not wish to proceed with surgery." *Id*. Dr. Eirle instructed Claimant "to return if pain or symptoms change or worsen." *Id*. at 1363.

Claimant returned to Dr. Eirle on November 15. *Id*. at 29. She complained that her symptoms had worsened since her October 11 visit. *Id*. In October, Claimant had described her pain as "moderate with a rating of 6/10," "intermittent," and unaccompanied by associated symptoms. *Id*. at 1361. On November 15, by contrast, she described her pain as "severe with a rating of 9/10," "constant," and causing "radiating pain and weakness." *Id*. at 29-30. She did not use an "assistive device" at the October visit, but she did use one at the November visit. *See id.* at 30, 1362. During both visits, her range of movement in her right hip was the same. *Id*. at 30-31; 1362.

The Court takes guidance from the Eleventh Circuit's decision in *Washington*, 806 F.3d at 1322-23. The claimant in that case – Washington – received an unfavorable decision before an ALJ and then attempted to supplement the record before the Appeals Council with materials from a psychological evaluation that occurred seven months after the ALJ's decision. *Id*. at 1319. The

7

Appeals Council refused to consider the new evidence, and the district court affirmed, concluding that the materials did not relate to the period on or before the ALJ's decision. *Id*. at 1320. The Eleventh Circuit reversed, finding the materials "chronologically relevant even though Dr. Wilson examined [Washington] several months after the ALJ's decision," because "Dr. Wilson understood that Mr. Washington had experienced hallucinations during the time period prior to the ALJ's decision[.]" *Id*. at 1322. Although Dr. Wilson "never explicitly stated that his opinions related back to the date of the ALJ's decision," the record contained no evidence that Mr. Washington's condition "declined in the period following the ALJ's decision." *Id*. at 1322. Accordingly, the Eleventh Circuit found Dr. Wilson's evidence to be chronologically relevant and remanded to the Commissioner for reconsideration.[2] *Id*. at 1323.

The Eleventh Circuit has since "confined *Washington*'s holding to its 'specific circumstances' – where the claimant had described her symptoms from the pre-ALJ period and the practitioner had reviewed records from that period." *Downing*, 856 F. App'x at 824 (citing *Hargress v. Soc. v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309–10 (11th Cir. 2018)). Accordingly, a report describing an MRI conducted over five months after the ALJ's decision was not chronologically relevant, when the report contained no discussion of the claimant's condition prior to the date of the ALJ's decision. *Id*. at 824. Similarly, a doctor's report was not chronologically relevant when it was produced during a claimant's first visit to the doctor after the ALJ's unfavorable decision, and the doctor's report did not indicate that the doctor had "evaluated [the claimant]'s past medical records when forming [her] opinion." *Hargress*, 883 F.3d at 1309; *see also Green v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 516, 519 (11th Cir. 2017) (finding a

---

[2] As discussed in the following section, the *Washington* court also found Dr. Wilson's evidence material. 806 F.3d at 1322.

8

doctor's treatment notes not chronologically relevant when the notes were produced during the claimant's first visit to that doctor, one month after the ALJ's unfavorable decision).

Here, Dr. Eirle's November 15 treatment notes were not produced months after the ALJ's decision, but rather a mere five days afterward. Unlike *Downing* and *Hargress*, the notes were not produced during a claimant's *first* visit to a treating physician. Rather, in this case, Dr. Eirle had been treating Claimant for months prior to her November 15 visit and was therefore in an optimal position to determine whether Claimant's condition had deteriorated following her prior visit on October 11.

Dr. Eirle's report does not specifically state *when* Claimant's condition began to deteriorate. While the unpublished *Green* decision commented negatively on a doctor's report that "did not specify that his opinion applied to the time period before the ALJ's decision," 695 F. App'x at 520, the published *Washington* decision states that a report could be chronologically relevant even if the doctor "never explicitly stated that his opinions related back to the date of the ALJ's decision[.]" 806 F.3d at 1323. Here, it may be that Claimant's condition was constant from October 11 through November 10 and then declined within the four days prior to Claimant's November 15 visit. As was the case in *Washington*, however, there is no evidence that Claimant's condition "declined in the period following the ALJ's decision." *Id*. at 1322. The more likely result is that *at least part* of Claimant's deterioration occurred between October 11 and November 10.

Accordingly, in light of the foregoing authority and based on the "specific circumstances" of this case, *Washington*, 806 F.3d at 1323, the Court concludes that the November 15 Note is chronologically relevant.

### ii.  Materiality

In addition to being chronologically relevant, Dr. Eirle's treatment notes must also be "material" for the Appeals Council to consider it.³ *Washington*, 806 F.3d 1321. The Appeals Council did not consider whether the November 15 treatment notes are material.

The Court looks to guidance from the Eleventh Circuit as to whether the Court should evaluate the materiality of Dr. Eirle's treatment notes, or if the Court should remand for the Appeals Council to address this issue. Two unpublished decisions suggest that the Court should not consider "*post hoc* rationalizations for agency actions." *Baker v. Commissioner of Social Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974)); *see also Howze v. Soc. Sec. Admin.*, No. 21-11066, 2022 WL 152236, at *3 (11th Cir. Jan. 18, 2022) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947))).

However, in *Raices v. Commission of Social Security*, the Eleventh Circuit addressed a substantially similar issue. 805 F. App'x 836, 837 (11th Cir. 2020). In *Raices*, the Appeals Council had declined to review evidence that it deemed chronologically irrelevant. *Id.* at 837. On review, the district court determined that the Appeals Council's decision should be affirmed "because the new evidence was not material." *Id.* at 837. The *Raices* court held that "[e]ven if [the Appeals Council's] basis for declining review was erroneous, . . . the Appeals Council's refusal to consider the evidence should be affirmed because the new evidence was not material." *Id.* at 837.

Based on *Raices*, the Court concludes that it is, indeed, appropriate for the Court to consider whether the evidence is "material." Unlike the statements in *Baker* and *Howze*, which were dicta,

---

³ The evidence must additionally be "new," *i.e.,* non-cumulative. *Washington*, 806 F.3d at 1321. The November 15 evidence is arguably cumulative, but it is certainly not material, for the reasons discussed herein.

the *Raices* court's affirmance on the issue of materiality was necessary to resolve that case. Moreover, here, unlike the situation in which district courts review the Commissioner's decision based on the deferential "supported by substantial evidence" standard, *see, e.g*, *Duncan v. Kijakazi*, No. 20-cv-90, 2021 WL 6125788, at *6 (M.D. Ala. 2021) (remanding and citing *Baker*, 384 F. App'x at 896), the Court evaluates the Appeals Council's decision to exclude the evidence *de novo*. *Washington*, 806 F.3d at 1321. Accordingly, the Court will review whether the Appeals Council's decision should be affirmed because the November 15 evidence is not material.

Evidence is material if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). The Eleventh Circuit's precedent indicates that evidence is more likely to be considered material when it evinces an impairment that the ALJ did not consider. *See, e.g.*, *Washington*, 806 F.3d at 1321 (material evidence of psychological impairments the ALJ had not considered); *Milano*, 809 F.2d 763, 766 (11th Cir. 1987) (material evidence of a claimant's psychological disabilities which had not been presented to the ALJ); *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985) ("This new evidence is the product of what is apparently the only comprehensive psychological evaluation of Cherry's mental condition."). By contrast, an evaluation from a provider that "indicates a more severe condition than [ ] earlier treatment records" is less likely to amount to material evidence. *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020); *see also Stone v. Soc. Sec. Admin.*, 658 F. App'x 551, 553 (11th Cir. 2016) (finding evidence not material when it related to a claimant's condition that the ALJ had already considered).

Here, the ALJ considered Claimant's hip condition, its functionality, and the pain it was causing her. TR. at 114-15. The ALJ concluded that the "longitudinal medical history is inconsistent with her allegations of disability." TR. at 112. The ALJ reasoned that Claimant's

11

"allegations regarding disabling symptoms and limitations, in comparison to the objective evidence, is diminished because those allegations are greater than expected in light of the objective evidence of record." *Id.* In other words, "the overall evidence does not support the level of symptom intensity, persistence, and functionally limiting effect alleged by the claimant." *Id.* at 115.

Given the ALJ's decision and reasoning, there is no reasonable possibility that the November 15 treatment notes would change the administrative outcome. The November 15 treatment notes evince that Claimant reported more pain than she had during her prior visits. On November 15, she rated her pain as 9/10, TR. at 30, whereas she had previously rated her pain as 7/10 during the August 18 visit, 6/10 during the August 30 visit, and 6/10 at the October 11 visit. *Id.* at 1288, 1338, 1361. Her November 15 description of her pain as "constant" was not new, as she provided the same description during her two visits in August. *Id*. at 30, 1290, 1338. Her reported associated symptoms during the November 15 were more severe than those previously reported, but not substantially different. *Compare id*. at 30 (associated symptoms of "radiating pain and weakness") *with id.* at 1288 (associated symptoms of "numbness, tingling and weakness"). Like the August 18 treatment notes, the November 15 treatment notes state that "patient does use an assistive device." *Id.* at 30, 1289. At best, the November 15 evidence "indicates a more severe condition than . . . earlier treatment records. *McCullars*, 825 F. App'x 694 (finding such evidence not material); *Stone*, 658 F. App'x 551 ("Because the ALJ already considered similar evidence of Stone's history of depression, no reasonable possibility exists that [new evidence relating to depression] would have changed the result of the proceedings.").

Importantly, the treatment note's statements regarding Claimant's level of pain derive not from an objective examination, but rather from Claimant's subjective descriptions. *See* TR. at 29

12

("Patient describes the pain as aching, sharp, stabbing and shooting."). As noted above, the ALJ considered the evidence regarding Claimant's subjective degree of pain and functionality and concluded that they were not supported by the "objective evidence." TR. at 112. There is no "objective evidence" within the November 15 treatment notes that would cause the ALJ to reach a different result. During all four of Claimant's visits to Dr. Eirle, Dr. Eirle apparently conducted an examination and testing of Claimant's right hip. *See* TR. at 30, 1289, 1339, 1362. Each examination contains the exact same conclusions regarding Claimant's range of motion and functionality. *Id*. Because Dr. Eirle's examination produced the same results as previous examinations when Claimant's reported pain was lower. The November 15 evidence is consistent with the ALJ's conclusion that Claimant's "allegations regarding disabling symptoms and limitations . . . are greater than expected in light of the objective evidence of record." TR. at 112.

In sum, the Court concludes that there is no "reasonable possibility that the new evidence would change the administrative outcome." *Hyde*, 823 F.2d at 459. Accordingly, while the Court disagrees with the Appeals Council's conclusion that the November 15 evidence is not chronologically relevant, the Court nonetheless affirms the Appeals Council's decision not to consider the evidence because the evidence is not material. *See Raices*, 805 F. App'x at 837.

### B. Consideration of Medical Opinion Evidence

Claimant next argues that the ALJ failed to "properly assess the 'supportability' and 'consistency' of the opinion of Claimant's physician, Adam Nassery[.]" ECF No. [23] at 3.

20 C.F.R. § 404.1520c(b) provides that the Commissioner "will articulate in [the] determination or decision how persuasive [he or she] finds all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." For claims filed on or after March 27, 2017, an ALJ satisfies the articulation standard set forth in 20 C.F.R.

13

§ 404.1520c(b) by considering certain factors enumerated in 20 C.F.R. § 404.1520c(c)(1)–(5). The ALJ must address the two "most important factors": "supportability" and "consistency." *Id.* § 404.1520c(b)(2). Regarding "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As for "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

The ALJ need not use any "magic words" in considering the two factors. *See Frye v. Comm'r of Soc. Sec.*, No: 6:21-cv-741-DCI, 2022 WL 1045719, at *5 (M.D. Fla. Apr. 7, 2022) ("The ALJ may not have used the word 'supportability,' but he discussed the record with respect to the inconsistency of the opinions within the physician's own records, and the Court finds that to be adequate.") (citing *Vachon v. Comm'r of Soc. Sec.*; 2022 WL 458604, at *14 n.5 (M.D. Fla. Feb. 15, 2022); *Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record.") (citations omitted).

Beginning with "supportability," the ALJ disparaged the functional evaluation that Dr. Nassery apparently relied upon in forming his opinion. TR. at 114-15. *Compare id.* at 1351-52 (Dr. Nassery's report finding a 4% lumbosacral region functional impairment, 59% lower extremity impairment, 29% right arm impairment, 7% left arm impairment) *with id.* at 1336 (functional evaluation report listing the exact same percentages). She criticized that functional

evaluation as "not a valid representation of claimant's disability." *Id.* at 114. "Rather, it appears to be some sort of system created by an accident doctor" that lacks "methodology" and contains "many values that were not measured or invalid." *Id*. at 115. In criticizing the functional evaluation upon which Dr. Nassery's opinion relied, the ALJ addressed the supportability of his opinion and found it lacking. 20 C.F.R. § 404.1520c(c)(1).

Turning to "consistency," the ALJ systematically compared Dr. Nassery's opinions with the record and found five significant inconsistencies. TR. at 114. The ALJ's consistency analysis is replete with citations to the record. *Id*. at 114-15. The ALJ concluded that the functional evaluation that Dr. Nassery relied upon "is not consistent with findings on physical examinations." *Id*. at 114. Thus, the ALJ sufficiently explained that she found Dr. Nassery's medical opinions unpersuasive because they were inconsistent with "the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2).

Thus, the Court agrees with Judge Otazo-Reyes that the ALJ sufficiently explained why she found Dr. Nassery's opinion unpersuasive in light of the "consistency" and "supportability" factors. Having conducted a thorough review of the ALJ's decision and the record as a whole, the Court concludes that the ALJ's decision "is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.

**IV.    CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Magistrate Judge Valle's Report and Recommendation, **ECF No. [22]** is **ADOPTED IN PART**;

2. Defendant's Motion for Summary Judgment, **ECF No. [20]**, is **GRANTED**;

3. Claimant's Motion for Summary Judgment, **ECF No. [13]**, is **DENIED**;

4. Claimant's Objections, **ECF No. [23]**, are **OVERRULED**;

5. The ALJ's Decision is **AFFIRMED**;

6. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED** as moot, and all deadlines are **TERMINATED**;

7. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 13, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record